IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MANESSA ELLIOTT on behalf of her minor son, ADEH,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-2104<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

*I.*    *INTRODUCTION* .................................................. 1

*II.*    *PRINCIPLES OF REVIEW* ........................................ 2

*III.*    *FACTS* .............................................................. 3

*IV.*    *CONCLUSIONS OF LAW* ......................................... 4
       *A.*    *ALJ's Disability Determination* ........................... 4
       *B.*    *Objections Raised By Claimant* ........................... 6
              *1.*    *Health and Physical Well-Being Domain* ....... 6
              *2.*    *Credibility Determination* ........................ 11

*V.*    *CONCLUSION* ................................................... 16

*VI.*    *ORDER* ........................................................... 16

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Manessa Elliott on behalf of her minor son, ADEH, on November 30, 2015, requesting judicial review of the Social Security Commissioner's decision to deny an

application for Title XVI supplemental security income ("SSI") benefits for ADEH.[1] Elliott asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits for ADEH. In the alternative, Elliott requests the Court to remand this matter for further proceedings.

## *II. PRINCIPLES OF REVIEW*

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

---

[1] On April 12, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

ADEH was born in 2010.

On June 27, 2012, Elliott filed an application for SSI benefits on behalf of her minor son, ADEH, alleging disability due to x-linked ichthyosis, hypohidrosis, and sensitivity to heat. Elliott alleged ADEH became disabled on April 2, 2011.[2] The

---

[2] SSI benefits, however, are not payable prior to the month in which the application was filed. *See* 20 C.F.R. § 416.335. Therefore, the relevant time period in this case began on June 27, 2012, the
(continued...)

3

application was denied upon initial review, and on reconsideration. On October 30, 2013, Elliott and ADEH appeared via video conference with their attorney before Administrative Law Judge ("ALJ") Eric S. Basse for an administrative hearing. In a decision dated March 21, 2014, the ALJ denied ADEH's claim. The ALJ determined ADEH was not disabled as defined in the Social Security Act, and not entitled to SSI benefits. Elliott appealed the ALJ's decision. On September 25, 2015, the Appeals Council denied Elliott's request for review. Consequently, the ALJ's March 21, 2014 decision was adopted as the Commissioner's final decision.

On November 30, 2015, Elliott, on behalf of ADEH, filed the instant action for judicial review. A briefing schedule was entered on March 3, 2016. On June 1, 2016, Elliott filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that ADEH is not disabled. On July 1, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision.

Additionally, on May 16, 2016, both parties together filed a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and ADEH's medical history. *See* docket number 10. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined ADEH is not disabled. In making this determination, the ALJ was required to complete the three-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.924; *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718

---

[2](...continued)
date Elliott filed ADEH's application for SSI benefits.

(8th Cir. 2005); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853 (8th Cir. 2003). In *Moore*, the Eighth Circuit Court of Appeals explained the three-step sequential test as follows:

> At the first step, the [ALJ] determines whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). At the second step, an ALJ determines whether the child has an impairment that is "severe." 20 C.F.R. § 416.924(c). At the third step, an ALJ determines whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations. 20 C.F.R. § 416.924(d); 20 C.F.R. pt. 404, subpt. P, app. 1.

*Moore*, 413 F.3d at 721. At step two, "if the impairments result in no more than minimal functional limitations, the impairments are not severe and the child is not disabled." *Pepper*, 342 F.3d at 854. Under step three, "a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment." *Id.* (citing 20 C.F.R. § 416.926(a)). The Social Security Regulations provide that a child's impairments may also functionally equal a listed impairment under certain circumstances. *See* 20 C.F.R. § 416.926a(a). An impairment is functionally equal to a listed impairment, "if there is an 'extreme' limitation in one of six specific functional domains, or a 'marked' limitation in at least two domains." *Pepper*, 342 F.3d at 854; 20 C.F.R. § 416.926a(a). The domains to be considered by the ALJ are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being. *See* 20 C.F.R. § 416.926a(a)(1)(i)-(vi).

The ALJ applied the first step of the analysis and determined ADEH had not engaged in substantial gainful activity since the date his application for SSI benefits was

filed.[3] At the second step, the ALJ concluded from the medical evidence ADEH had the following severe combination of impairments: x-linked ichthyosis and hypohidrosis. At the third step, the ALJ found ADEH did not have an impairment or combination of impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Also at the third step, the ALJ determined ADEH did not have an impairment or combination of impairments that functionally equaled the listings. Therefore, the ALJ concluded ADEH was not disabled.

### B. Objections Raised By Claimant

Elliott argues the ALJ erred in two respects. First, Elliott argues the ALJ erred by finding ADEH had only a "marked" limitation in the domain of "Health and Physical Well-Being," instead of finding an "extreme" limitation in that domain. Second, Elliott argues the ALJ failed to make a proper credibility determination in this case.

### 1. Health and Physical Well-Being Domain

Elliott argues the ALJ erred in determining ADEH's limitations were not functionally equivalent to a listed impairment in accordance with 20 C.F.R. § 416.926a(a). Specifically, Elliott argues the ALJ erred by finding ADEH only had "marked" limitations in the domain of health and physical well-being. Elliott maintains the ALJ should have determined ADEH had "extreme" limitations in that domain. Elliott concludes ADEH meets the requirements of functional equivalency and should have been found disabled due to his extreme limitations in the domain of health and physical well-being. Therefore, Elliott asserts this matter should be reversed and remanded for calculation of benefits; or in the alternative, remanded for further consideration of the domain of health and well-being.

Functional equivalency is evaluated under 20 C.F.R. § 416.926a. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 (8th Cir. 2005). "Functional equivalency to a

---

[3] The ALJ noted ADEH "was born on November [], 2010. Therefore, he was an older infant on June 27, 2012, the date [the] application was filed, and is currently a preschooler." Administrative Record at 18.

listed impairment exists if a child has an 'extreme' limitation in at least one of six functional domains listed in § 416.926a(b)(1) or a 'marked' limitation in at least two of the domains." *Id*. The regulations define a "marked" limitation as follows:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. . . . "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i). Specifically, in the domain of health and physical well-being, the regulations provide:

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have a "marked" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than 3 times in a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv).

Under the regulations, an "extreme" limitation is found:

> when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. . . . "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.

7

20 C.F.R. § 416.926a(e)(3)(i). Specifically, in the domain of health and physical well-being, the regulations provide:

> For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have an "extreme" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section. However, if you have episodes of illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases. See §§ 416.925 and 416.926.

20 C.F.R. § 416.926a(e)(3)(iv).

In his decision, the ALJ addressed the domain of health and physical well-being as follows:

> [ADEH] has marked limitation in health and physical well-being. The record reflects that [he] has a skin condition that requires daily skin care and results in occasional flares, about three to four times a year. Although he generally exhibits normal strength, gait and functioning, these periodic flares and ongoing extensive care would result in a marked limitation in this domain, for purposes of skin care on a daily basis.

(Administrative Record at 25.)

Furthermore, in his decision, the ALJ thoroughly reviewed the medical evidence and explained his reasoning for finding "marked" limitations in the domain of health and physical well-being. The ALJ explained:

> [ADEH] constantly has lesions, they never go away but they sometimes look better. He has more serious flare ups where the lesions get worse. These flare ups occur about three times a year and last for about one week. His mother testified that he is not able to go to the park or play outside because he has to stay cool. . . .

8

According to a report submitted by [ADEH's] mother in June 2012, [he] generally seems to function well and the only physical problems he has are holding a crayon or pencil and stacking small blocks (Ex. 1E). Otherwise, he can walk, run and throw a ball, but his activities are mostly indoor (Ex. 1E/7). Day care records indicate that they keep the classroom cooler than usual for [ADEH], and accommodate him by providing extra fans, misting bottles and extra staff when [he] cannot go outside with the other children (Ex. 10F).

Early treatment records from the Mayo Clinic show that [ADEH] had ichthyosis and moderately dry skin over multiple areas, but otherwise no obvious abnormalities. He has normal range of motion and strength in his legs and walks normally (Ex. 1F/8,12). Other records note normal functioning as well (Ex. 5F/4; 6F/2). In June 2012, Jennifer Hand, M.D., noted that [ADEH's] main concern is his heat intolerance, and his inability to play outdoors with other children. However, she also noted that apart from these concerns, [he] had been doing well and had even been getting outdoors more and his skin had become tan (Ex. 1F/9). Subsequent records of exams note well-hydrated skin with some scaling and dermatitis changes, but no significant findings (Ex. 4F). Indeed, in October 2012, Dr. Hand specifically noted that x-linked ichthyosis is one of the mildest types of ichthyosis, and that most children with this condition tend to live a normal life (Ex. 4F/7). She also told [ADEH's] mother that x-linked ichthyosis generally improves with age.

Treatment notes from June 2013 indicate that [ADEH's] ichthyosis was under "very good control" (Ex. 4F/1). On examination, [he] had some cracking of the first toenails bilaterally, only very subtle "platelike scaling" of the lower extremities, consistent with the diagnosis of x-linked ichthyosis. However, those reports note that the skin signs were only mild at the time. The record also noted that [ADEH's] mother and grandmother only used the prescription creams as needed for flares (Ex. 4F/2). In September 2013,

9

an examination noted no concerning skin rashes or lesions (Ex. 6F/2). At a follow-up in November 2013, Dr. Hand observed that [ADEH] was a "very happy, rambunctious little boy running around the room["] (Ex. 9F/2).

Dr. Hand submitted a letter indicating that [ADEH] is predisposed to worsened flares, of unknown frequency, of atopic dermatitis, but that he should function fairly normally between flares (Ex. 11F/2). She further stated that his skin requires time intensive, ongoing treatment every day to keep his skin functioning normally. She also noted that at his last visit, [he] had painful fissures on his feet, which were uncomfortable enough that he avoided walking (Ex. 11F/2). However, the undersigned notes that according to her notes, the last visit was the one where [ADEH] was observed as a "very happy, rambunctious little boy running around the room["] (Ex. 9F/2).

Overall, the medical evidence of record does not support a finding of disability. While the record does demonstrate medically determinable impairments that could reasonably be expected to cause some of [ADEH's] symptoms, it seems as though his conditions are generally well controlled. Treatment records have noted scaly or dry skin, but not the severe skin lesions described by [his] mother and grandmother. Photographs of [ADEH's] legs and feet show a skin condition that is no doubt uncomfortable for [him], but do not look as though his condition is so severe as to seriously interfere with his overall functioning. Treatment records indicate that [ADEH] can move and walk normally, and the biggest chronic limitation seems to be the skin care that his family provides.

(Administrative Record at 17-19.)

Having reviewed the entire record, the Court finds the ALJ did not err in finding "marked" limitations in the domain of health and physical well-being. The ALJ fully explained the infrequency of ADEH's skin lesion flares and evidence of normal strength, gait, and functioning consistent with 20 C.F.R. § 416.926a(e)(2)(i) and (iv). Accordingly,

the Court finds the ALJ's decision as it pertains to the domain of health and physical well-being is supported by substantial evidence on the record as a whole. *See Bernard*, 774 F.3d 482, 486. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Credibility Determination

Elliott argues the ALJ failed to properly evaluate the subjective allegations of pain and disability reported by her and ADEH's grandmother on ADEH's behalf. Elliott maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered the testimony, and made a proper credibility determination in this matter.

When making a credibility determination, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935

(same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Elliott's and ADEH's grandmother's subjective allegations of pain and disability for ADEH as follows:

> [ADEH] alleges disability due to x-linked ichthyosis and hypohidrosis (Ex. 3E/2). According to his mother, he requires extra care to monitor his temperature and skin at all times (Ex. 7E/4). At the hearing, his mother testified that he is unable to sweat properly and he must be kept in a cool

12

environment. She testified that he has skin lesions all the time, primarily in his legs and feet, which interfere with his walking. She testified that he constantly has lesions, they never go away but they sometimes look better. He has more serious flare ups where the lesions get worse. These flare ups occur about three times a year and last for about one week. His mother testified that he is not able to go to the park or play outside because he has to stay cool.

[ADEH's] grandmother testified that she provides him daycare and usually watches him on the weekends. She testified that he can take up to the three to four baths a day to keep his skin hydrated. He cannot sweat and has to be monitored while outside.

After considering the evidence of record, the undersigned finds that [ADEH's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below.

According to a report submitted by [ADEH's] mother in June 2012, [he] generally seems to function well and the only physical problems he has are holding a crayon or pencil and stacking small blocks (Ex. 1E). Otherwise, he can walk, run and throw a ball, but his activities are mostly indoor (Ex. 1E/7). Day care records indicate that they keep the classroom cooler than usual for [ADEH], and accommodate him by providing extra fans, misting bottles and extra staff when [he] cannot go outside with the other children (Ex. 10F).

Early treatment records from the Mayo Clinic show that [ADEH] had ichthyosis and moderately dry skin over multiple areas, but otherwise no obvious abnormalities. He has normal range of motion and strength in his legs and walks normally (Ex. 1F/8,12). Other records note normal functioning as well (Ex. 5F/4; 6F/2). In June 2012, Jennifer Hand, M.D., noted that [ADEH's] main concern is his heat intolerance, and his

13

inability to play outdoors with other children. However, she also noted that apart from these concerns, [he] had been doing well and had even been getting outdoors more and his skin had become tan (Ex. 1F/9). Subsequent records of exams note well-hydrated skin with some scaling and dermatitis changes, but no significant findings (Ex. 4F). Indeed, in October 2012, Dr. Hand specifically noted that x-linked ichthyosis is one of the mildest types of ichthyosis, and that most children with this condition tend to live a normal life (Ex. 4F/7). She also told [ADEH's] mother that x-linked ichthyosis generally improves with age.

Treatment notes from June 2013 indicate that [ADEH's] ichthyosis was under "very good control" (Ex. 4F/1). On examination, [he] had some cracking of the first toenails bilaterally, only very subtle "platelike scaling" of the lower extremities, consistent with the diagnosis of x-linked ichthyosis. However, those reports note that the skin signs were only mild at the time. The record also noted that [ADEH's] mother and grandmother only used the prescription creams as needed for flares (Ex. 4F/2). In September 2013, an examination noted no concerning skin rashes or lesions (Ex. 6F/2). At a follow-up in November 2013, Dr. Hand observed that [ADEH] was a "very happy, rambunctious little boy running around the room["] (Ex. 9F/2).

Dr. Hand submitted a letter indicating that [ADEH] is predisposed to worsened flares, of unknown frequency, of atopic dermatitis, but that he should function fairly normally between flares (Ex. 11F/2). She further stated that his skin requires time intensive, ongoing treatment every day to keep his skin functioning normally. She also noted that at his last visit, [he] had painful fissures on his feet, which were uncomfortable enough that he avoided walking (Ex. 11F/2). However, the undersigned notes that according to her notes, the last visit was the one where [ADEH] was observed as a "very happy, rambunctious little boy running around the room["] (Ex. 9F/2).

14

> Overall, the medical evidence of record does not support a finding of disability. While the record does demonstrate medically determinable impairments that could reasonably be expected to cause some of [ADEH's] symptoms, it seems as though his conditions are generally well controlled. Treatment records have noted scaly or dry skin, but not the severe skin lesions described by [his] mother and grandmother. Photographs of [ADEH's] legs and feet show a skin condition that is no doubt uncomfortable for [him], but do not look as though his condition is so severe as to seriously interfere with his overall functioning. Treatment records indicate that [ADEH] can move and walk normally, and the biggest chronic limitation seems to be the skin care that his family provides.

(Administrative Record at 17-19.)

It is clear from the ALJ's decision that he thoroughly considered and discussed ADEH's treatment history, medical history, use of medications, functional restrictions, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining ADEH's subjective allegations, which were provided by his mother and grandmother, of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited the subjective complaints in this matter, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions

of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## V. CONCLUSION

The Court finds the ALJ did not err in finding ADEH had "marked" limitations in the domain of health and physical well-being. The ALJ also made a proper credibility determination in this matter. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 27th day of October, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA